326 So.2d 900 (1976)
Charles COLBERT, Plaintiff and Appellee,
v.
MIKE-BAKER BRICK COMPANY OF NEW IBERIA, INC., Defendant and Appellant.
No. 5269.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1976.
Rehearings Refused March 26, 1976.
*901 Davidson, Meaux, Onebane & Donohoe, by John G. Torian, II, Lafayette, for defendant-appellant.
Edward D. Rubin, Lafayette, for plaintiff-appellee.
Before HOOD, CULPEPPER, DOMENGEAUX, GUIDRY and PAVY, JJ.
CULPEPPER, Judge.
Plaintiff-appellee, Charles Colbert, filed this suit under LSA-R.S. 23:631, 23:632 for wages due and demanded but not paid within 24 hours after discharge. He also seeks penalties and attorney's fees. Defendant is his former employer, Mike-Baker Brick Company of New Iberia, Inc. *902 From a judgment awarding plaintiff wages in the sum of $36.30, plus $1,228.50 in statutory penalties, and $350 in attorney's fees, the defendant has appealed.
The issues are: (1) In the absence of allegations or proof that the defendant-employer was engaged in interstate commerce, is the National Labor Relations Act applicable, so that the plaintiff, although not a member of the union, may be bound by the collective bargaining agreement requiring arbitration of this dispute? (2) If the National Labor Relations Act is not applicable, is plaintiff bound under Louisiana Law by the arbitration requirement of the collective bargaining agreement between his employer and the union, of which plaintiff was not a member? (3) On the merits, is plaintiff entitled to judgment for wages, penalties and attorney's fees under LSA-R.S. 23:631, 23:632?
Plaintiff began employment for defendant on April 9, 1973. He drove a truck used to haul bricks. The truck was equipped with an unloading device known as a "Superlite". The Superlite weighs approximately 1300 pounds and is subject to falling or sliding off the back of the truck if not properly handled. Soon after his employment, the Superlite which plaintiff was operating slipped off the truck. The services of a wrecker were required to replace it at a cost of $30. At the time of that incident, one of the owners of defendant company warned plaintiff that if the situation occurred again the plaintiff would be required to reimburse his employer for the cost of replacing the Superlite on the truck. Plaintiff, however, denies that such a warning was issued to him.
On May 23, 1973, approximately six weeks after plaintiff began his employment, he again flipped a Superlite off his truck. On this occasion the cost of the wrecker service required to replace the Superlite amounted to $36.30. The next afternoon, May 24, 1973, plaintiff was discharged by his employer, apparently for refusing to drive a truck when ordered to do so. When plaintiff returned to defendant's office the following morning to obtain his paycheck, he found that his wages due for the week were $94.50, but defendant had withheld $36.30 as the cost of the wrecker service necessitated by plaintiff's alleged negligent damage to the Superlite.
At all times pertinent to this action there was in effect a collective bargaining agreement between the defendant company and the union which represented his employees. This contract required that all employees hird by defendant become and remain members of the union. However, the contract also provides:

"Article XIISeniority.
Section 1. All new employees shall be regarded as temporary for the first thirty-one (31) days of their employment. Such employees shall be regarded as probationary employees and shall not be subject to the terms of this agreement."
The evidence shows that although plaintiff had been employed for about six weeks, he had never joined the union, was not a member and had never paid dues.
The collective bargaining agreement also provides:

"Article XIIIGrievance Procedure
The Union and the Company agree that there shall be no strike, lockout, tie-up or legal proceedings without first using all possible means of settlement as provided for in this Agreement of any controversy which might arise.
Should differences arise between the Company and the Union or any employee of the Company as to the meaning or application of the provisions of this agreement, such differences shall be settled in the following manner:" (Then the agreement sets out the procedure for arbitration)

* * * * * *
*903 "Article XVIIEquipment, Accidents, Reports

* * * * * *
Section 2. Each piece of equipment is assigned to a stated employee and he is responsible for this equipment, if through his proven neglect the equipment is damaged or destroyed he will repay in full to the Company for the repairs or replacement of the equipment if it is beyond repair."

APPLICATION OF NATIONAL LABOR RELATIONS ACT
In this Court, defendant contends the National Labor Relations Act is applicable, and that, under Federal jurisprudence construing that act, collective bargaining agreements entered into by employers with a properly elected bargaining representative or union are binding on all employees whether they are members of the union or not. Defendant cites J. I.Case Company v. NLRB, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944); Wallace Corporation v. NLRB, 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216 (1944); Prudential Insurance Company of American v. National Labor Relations Board, 2 Cir., 412 F.2d 77 (1969); and Britt v. Trailmobile Company, 179 F.2d 569 (6th Cir. 1950).
However, the jurisprudence makes it clear that the National Labor Relations Act does not apply unless it is shown that interstate commerce is affected. See Windward Shipping (London), Ltd. v. American Radio Association, AFL-CIO, 415 U.S. 104, 94 S.Ct. 959, 39 L.Ed.2d 195 (1974); American Radio Association, AFL-CIO v. Mobile Steamship Association, 419 U.S. 215, 95 S.Ct. 409, 42 L.Ed.2d 399 (1974); New Orleans Opera Guild v. Local 174, Musicians Mutual Protective Union, 242 La. 134, 134 So.2d 901 (1961). In the present case, there is no allegation nor proof whatever that the defendant-employer was engaged in interstate commerce.
We conclude the National Relations Act has no application to this dispute. Hence, the Federal jurisprudence construing that Act and on which defendant relies, likewise has no application to his case.
We might add gratuitously that if it had been shown the National Labor Relations Act does apply to this dispute, then probably the state courts would have no jurisdiction. Toomer v. Local No. 995, International Brotherhood of Electrical Workers, 131 So.2d 248 (1st Cir. 1961) and the authorities cited there.

UNDER LOUISIANA LAW, IS PLAINTIFF BOUND TO ARBITRATE?
As a general rule of Louisiana law, a party is bound only by contracts to which he is party. LSA-C.C. Article 1901. A third person may benefit from another's contractual undertaking, where he signifies his assent to accept it. LSA-C.C. Article 1902; Andrepont v. Acadia Drilling Company, 255 La. 347, 231 So.2d 347 (S.Ct. 1969). But, under Louisiana law, no contract is binding without the consent of both parties, express or implied.
Therefore, we hold that under Louisiana law an employee who is not a union member is not bound by a collective bargaining agreement entered into by that union.

THE MERITS
We now consider the applicability and effect of LSA-R.S. 23:631 under the facts as presented.
Counsel for defendant-appellant first argues this statute is inapplicable since it applies only to employment "by the day, week or the month". He suggests that plaintiff Colbert was employed at an hourly rate of pay and for an indefinite period of time and therefore is not subject to the terms of the Act. We cannot agree.
Though the evidence is clear that plaintiff was paid an hourly wage, it is equally clear that his employment was based upon a weekly pay period, i.e., he was paid weekly. We conclude that plaintiff's employment was "by the . . . week".
*904 Counsel for defendant-appellant seeks to analogize to the instant situation that presented in the cases of Dunn v. Bessie F. Heirn School, Inc., 209 So.2d 538 (4th Cir. 1968) and Gatti v. Southern Research Company, Inc., 271 So.2d 376 (2d Cir. 1972). In Dunn, a school teacher was hired for a 9-month term and was to be paid over a period of 12 months. The court held that employment was not "by the day, week or month". It was for a term. Likewise, in Gatti, supra, the plaintiff was employed at an hourly wage for the duration of a certain project. The court held the Act not applicable to this employment. Again the distinguishing feature is that the employment was for a term.
Defendant's next contention is that even if LSA-R.S. 23:631, 23:632 is applicable, the facts of this case show that the employer had just grounds to withhold the $36.30 from plaintiff's wages.
As stated above, the facts show that soon after his employment plaintiff damaged one Superlite on his truck, which the employer repaired at a cost of $30. On that occasion, the employer warned the plaintiff that if this happened again he would be charged with the cost of repairs.
With respect to the subject accident, plaintiff was the only witness. He testified that one of the legs holding up the Superlite was "crooked" and that it fell while he was unloading the bricks from the truck. Defendant argues that under plaintiff's own testimony he was negligent, inasmuch as he was aware of the danger in operating the Superlite with one of the legs "crooked". Defendant argues that plaintiff was in complete control of the truck, and that he did not take sufficient care to see that the Superlite was set up correctly prior to unloading the bricks, and, as a result, the Superlite flipped off the truck.
Although the issue of plaintiff's negligence in damaging the Superlite is close, we are unable to find that defendant has proved by a preponderance of the evidence that plaintiff was negligent. Accordingly, we find plaintiff is entitled to recover the $36.30 withheld from his wages.
However, we think defendant did have reasonable grounds to withhold the wages, and it was therefore not arbitrary or capricious so as to be subject to penalties and attorney's fees. In Becker v. Choate, 204 So.2d 680 (3rd Cir. 1967), we stated the applicable law as follows:
"Although an employer's delay in paying wages earned by employees within twenty-four hours after their discharge or resignation renders him liable for penalties under R.S. 23:632, this statute must be strictly construed, and it is well settled that the courts will refuse to allow penalties if the employer had some equitable justification for not paying the wages timely. (citations omitted)

* * * * * *
"While cases on this point generally state that R.S. 23:632 is subject to `equitable defenses', we are of the opinion that the word `defenses' does not mean a `defense' in a strict sense of the word. Rather, the tenor of these cases seems to indicate that the court will refuse to assess penalties and attorneys' fees where the facts of the particular case strongly indicate that greater justice will be attained by such refusal. These facts then become equitable consideration, or `defenses' in a loose sense of the word, which will move the court to deny the penalties."
We find this case comes within the rule of Becker v. Choate, supra, and the cases cited therein. Defendant reasonably believed it was justified in withholding an amount from plaintiff's wages. The ultimate realization that the action was improper does not prevent that action from constituting and "equitable defense" in a suit for penalties and attorney's fees.
For the reasons assigned, the decision of the trial court is amended so as to delete the awards for penalties and attorney's fees. In all other respects the decision is *905 affirmed. The costs of this appeal are assessed to defendant-appellant.

Affirmed, as amended.

PAVY, J., concurs and assigns reasons.
DOMENGEAUX, J., concurs in the result reached.
PAVY, Judge (concurring).
I concur in the majority opinion but think that the arbitration issue is more properly disposed of on procedural grounds. Defendant filed its exception of no cause or right of action the day before trial and some eight months after having filed answer. The claim to arbitration constitutes a dilatory or waivable declinatory exception which must be urged in limine. See Lawton v. Cain, 172 So.2d 734 (1965, 2nd Cir.); Quinn Construction Co., Inc. v. Savoie, 207 So.2d 229 (1968, 4th Cir.); Alvis Hotel, Inc. v. Alvis Hotel of Monroe, Inc., 149 So.2d 199 (2nd Cir., 1963); B. Segall Co., Inc. v. J. C. Trahan (1973, 2nd Cir.); 276 So.2d 340, 17A CGS, pages 889 et seq.